*Gomez v. Neighborhood Health Partnership, Inc.*
Case No. 24-11898-D

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Case No. 24-11898-D

**Abigail Gomez,**

**Appellant,**

**v.**

**Neighborhood Health Partnership, Inc.**

**Appellee.**

Appeal from the United States District Court of the Southern District of Florida
(Miami Division)

---

**Appellant's Opening Brief**

---

Maria T. Santi, Esq.
Florida Bar Number 117564
**HEALTH AND MEDICINE LAW FIRM**
8950 SW 74th Court, Suite 2201
Miami, FL 33156
Ph: 305-677-2292
msanti@healthandmedicinelawfirm.com
*Counsel for Appellant*

i

*Gomez v. Neighborhood Health Partnership, Inc.*
Case No. 24-11898-D

**Certificate of Interested Persons/Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 28-1(b), the undersigned counsel for Plaintiff/Appellant, Abigail Gomez, certifies that the following is a list of all trial judge(s) and all attorneys, persons, associations or persons, firms, partnerships, corporations or governmental entities that have an interest in the outcome of this case:

1.    Gerson, Shari (Counsel for Defendant/Appellee)

2.    Gomez, Abigail (Plaintiff/Appellant)

3.    Health and Medicine Law Firm (Counsel for Plaintiff/Appellant)

4.    Howard Garcia, Kelly Jean (Counsel for Defendant/Appellee)

5.    Neighborhood Health Partnership, Inc. (Defendant/Appellee)

6.    Reid, Lissette M. (U.S. Magistrate Judge)

7.    Santi, Maria T. (Counsel for Plaintiff/Appellant)

8.    Williams, Kathleen (Honorable District Court Judge)

/s/ Maria T. Santi
MARIA T. SANTI, ESQ.
Florida Bar No. 117564

ii

*Gomez v. Neighborhood Health Partnership, Inc.*
Case No. 24-11898-D

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal involves the granting of a Motion for Summary Judgment in favor of Defendant, Neighborhood Health Partnership, Inc., ("Insurance Company" and/or "Defendant/ Appellee"), and against Abigail Gomez, ("Plaintiff") under Federal Rule of Civil Procedure 56(c) under an ERISA governed plan. The basis of the opinion is that Plaintiff did not demonstrate entitlement to receive health coverage for services performed by her treating provider Dr. Epstein based upon the Eleventh Circuit's six-part test.  Appellant does not request oral argument.

*Gomez v. Neighborhood Health Partnership, Inc.*
Case No. 24-11898-D

## Table of Contents

Table of Authorities .................................................................. 1-3

Statement of Jurisdiction ........................................................... 4

Statement of Issues .................................................................. 4

Statement of the Case ............................................................... 5

   I.     Procedural History ......................................................... 5

   II.    Statement of the Facts ..................................................... 6

       A. Initial Authorization of Medical Necessary Rhinoplasty and Related Services ............................................................... 6

       B. Three Inconsistent Denials for Medically Necessary Rhinoplasty Surgery ................................................................. 7

          1.  First Appeal Due to UHCs Denial on Basis Rhinoplasty was Experimental .......................................................... 7

          2.  Second Denial in Response to First Appeal on the Basis that the Rhinoplasty was Cosmetic and an Exclusion Under the Plan ................................................................. 8

          3.  Second Appeal Due to UHC's Denial on Basis the Rhinoplasty was a Cosmetic Procedure .................................... 10

          4.  Third Denial in Response to Second Appeal on the Basis that the Rhinoplasty was not Medically Necessary .................... 12

Summary of the Argument ......................................................... 13

Standard of Review .................................................................. 15

iv

*Gomez v. Neighborhood Health Partnership, Inc.*
Case No. 24-11898-D

Argument ........................................................................................ 18

I.    THE    DISTRICT    COURT    ERRED    IN    RULING    THAT
      NEIGHBORHOOD    HEALTH    PARTNERSHIP'S    DENIAL    OF
      HEALTH INSURANCE BENEFITS WAS CORRECT .................. 18

      A. The Trial Court Failed to Interpret the Policy and Coverage
         Guidelines to Make its Findings ...................................... 19

      B. NHP's Decision was Not Correct Because it Ignored Substantial
         Evidence when it Denied Plaintiff's Claims ......................... 20

      C. NHP's Denials were Arbitrary and Capricious Because its Decisions
         were Inconsistent ........................................................ 24

II.   THE DISTRICT COURT ERRED IN RULING THAT NHP'S DENIAL
      FOR THE MEDICALLY NECESSARY RHINOPLASTY WAS
      CORRECT BECAUSE NHP DID NOT ACT IN THE BEST INTEREST
      OF PLAINTIFF .......................................................... 26

Conclusion ..................................................................................... 27

Certificate of Compliance .................................................................. 28

Certificate of Service ....................................................................... 29

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986) ........................ 15

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003) ..................................................................... 20

*Blankenship v. Metro. Life Ins. Co.,* 644 F.3d 1350, 1355 (11th Cir. 2011).......... 17

*Brock v. Walton*, 794 F.2d 586 (11th Cir. 1986) .................................................. 20

*Capone v. Aetna Life Ins. Co.,* 592 F.3d 1189, 1195-1196 (11th Cir. 2010) ......... 18

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).................................................................................................15

*Crume v. Metro. Life Ins. Co.,* 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006). ......15

*Firestone & Tire Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989). ............................................................................... 16,27

*Gaither v. Aetna Life Ins. Co.,* 394 F.3d 792, 807 (10th Cir. 2004) ......................21

*German v. Metro. Life Ins. Co.,* 2016 WL 5661628, *5 (S.D. Fla. Sept. 30, 2016) ...................................................................................................................... 17

*Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir.2006) .............................................27

*Heffernan v. UNUM Life Ins. Co. of Am., 101 Fed.Appx. 99, 109 (6th Cir.2004)* ...................................................................................................................... 20

*Hert v. Prudential Ins. Co. of Am.,* 650 F. Supp. 2d 1180, 1190 (M.D. Fla. 2009) ...................................................................................................................... 15

*Hopp v. Aetna Life Ins. Co.,* 3 F.Supp.3d 1335 (Fla. Middle District 2014) ..........26

*Melech v. Life Ins. Co. of N. Am.,* 739 F.3d 663, 672 (11th Cir. 2014)............ 16,27

*Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1325–26 (11th Cir. 2001) ........................................................................................................ 8, 24

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118, (2008) ............................. 21,26

*O.D. v. Jones Lang Lasalle Medical PPO Plus Plan,* 772 Fed. Appx. 800, 803-804 (11th Cir. 2019) ............................................................................................... 17

*Rekstad v. U.S. Bancorp,* 451 F.3d 1114, 1119–20 (10th Cir.2006). .................... 26

*Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377 (10th Cir.1992).............. 26

*Shaw v. Conn. Gen. Life Ins. Co.,* 353 F.3d 1276 (11th Cir. 2003)....................... 16

*Tippitt v. Reliance Standard Life Ins. Co.,* 457 F.3d 1227 (11th Cir. 2006) ......... 16

*Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir. 2000) ........................................................................................................24

**Statutes**

29 U.S.C. § 1102(a)(1) ........................................................................................ 16
29 U.S.C. §1104(a) ............................................................................................. 26
29 U.S.C. § 1104(a)(1)(A) .................................................................................. 27
29 U.S.C. § 1104(a)(1)(B) .................................................................................. 26
28 U.S.C. § 1291.................................................................................................... 4
28 U.S.C. §1331.................................................................................................... 4
29 U.S.C. §1132(e) ............................................................................................... 4
29 U.S.C. §1132(f).............................................................................................. 4
§ 502(a) (1) (B) of ERISA .................................................................................. 16

**Rules**

Federal Rule of Civil Procedure 56(c)......................................................15

Federal Rule of Appellate Procedure 4(a)(1)(A) ..................................... 4

Rule 32(a)(7) of the Federal Rules of Appellate Procedure ................................ 28

Rules 32(a)(5) and (6) of the Federal Rules of Appellate Procedure ...................28

11th Circuit Rule 32-4............................................................................ 28

## STATEMENT OF JURISDICTION

The Plaintiff initiated this action on November 21, 2022. ECF No. 1. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291, because the Plaintiff appeals from an order of the district court resolving all claims in this action. ECF Nos. 36, 41, 47. The parties agree the claims are subject to ERISA and, as such, the District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e) and (f). The appeal is timely. The Plaintiff filed her Notice of Appeal on June 6, 2024. ECF No. 49 which is within the 30-day deadline established by Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF ISSUES

1.      Whether the district court erred when it held that Plaintiff did not demonstrate entitlement to receive health coverage for services performed by her treating provider Dr. Epstein;

2.      Whether the district court erred in ruling that the denial of Plaintiff's health insurance benefits by Defendant was "correct" as a matter of law under the heightened arbitrary and capricious standard of review.

Plaintiff does not seek appellate review of Count II, Dr. Tourimi claim or the Order on Motion to Allow Discovery as it was directed mostly at issues with Dr. Tourimi's claim.

## STATEMENT OF THE CASE

### I.    Procedural History

This appeal concerns a denial of health insurance benefits by Neighborhood Health Partnership, Inc. ("NHP"). On November 21, 2022, Plaintiff filed suit against Defendant in the United States District Court for the Southern District of Florida. ECF No. 1. Plaintiff's complaint was brought pursuant to 29 U.S.C. §1132 (ERISA) and alleged that Defendant, NHP as claims administrator and Insurer of her heath insurance plan had wrongfully denied her claim for health insurance benefits, in violation of the above-referenced statute. On January 13, 2023, Defendant filed its Answer and Affirmative Defenses to the Complaint. ECF No. 8.

 On November 6, 2023, Defendant filed a motion for summary judgment. ECF No. 29. On November 23, 2023, Plaintiff filed a response and memorandum in opposition to Defendant's motion for summary judgment. ECF No. 30. NHP filed its Reply in Support of Summary Judgment on December 4, 2023. ECF No. 32. On April 1, 2024, the trial court entered a Report and Recommendation on Defendant's Motion for Summary Judgment. ECF No. 41. Plaintiff filed specific written objections to the Report on April 15, 2024. ECF No. 43. Defendant filed a Response to Plaintiff's Objections on May 2, 2024. ECF No. 46. On May 13, 2024, the trial court affirmed and adopted the general magistrate's report. ECF No. 47. A final judgment was entered on May 14, 2024. ECF No. 48.

## II.    STATEMENT OF THE FACTS

### A. Initial Authorization of Medical Necessary Rhinoplasty and Related Services

The Insured originally submitted a Pre-Authorization request in July 2019 for medically necessary medical services to be performed by Richard Davis, M.D. as follows:

- 20910  Cartilage graft; costochondral
- 20912  Cartilage graft; nasal septum
- 30450 Rhinoplasty, secondary; major revision (nasal tip work and osteotomies)
- 30465 of nasal vestibular stenosis (eg spreader grafting, lateral nasal wall reconstruction)

The request was approved by United Healthcare acting as agent for NHP via letter dated July 17, 2019. NHP 1325-1327. The letter stated "[a]fter review of the information submitted and your plan documents, it was determined that the treatment is medically necessary and is covered by your plan." NHP 1325.[1] UHC's rationale for the approval is within its internal notes. *See* NHP 232 which states:

> 22 yo female with **bilateral nasal airway obstruction** and a twisted and misshapen nose. Member **had problems breathing through her nose prior nasal surgery**, had severely ptotic nasal tip with exceedingly poor tip support prior her first surgery
> First surgery 05/05/2013, a component hump reduction was performed with reduction of the cartilaginous septum and rasping of the bony dorsum/ lateral osteotomies, pot operative hematoma /infection, recurrent tip ptosis, Nasal deformity revision 02/28/2014 Third surgery 09/05/2019 N**ow conspicuous tip deformity and symptomatic nasal**

---

[1] This is the same information and plan documents UHC would later use to deny coverage for Rhinoplasty

6

**airway dysfunction, nocturnal mouth breathing, excessive oral pharyngeal dryness during sleep, spotting blood, watery rhinorrhea** Exam: the middle vault is splayed palpably irregular, tip complex is grossly misshapen, **columella displaced to the left**, but the caudal septum **is dislocated and presenting into the right nasal vestibule** creating an overly wide and asymmetric columellar pedestal.

After the approval, Dr. Davis informed Ms. Gomez via letter dated July 23, 2019, that he declined to offer his surgical services based on the fact he no longer felt comfortable performing the nasal surgery revision and his opinion that the nose was traumatized from prior surgeries and at risk of complications. NHP 1300. As a result, Ms. Gomez was referred to three different physicians that could assist. NHP 1325. She was seen by Dr. Jeffrey S. Epstein, M.D. NHP 01342.

### B. Three Inconsistent Denials for Medically Necessary Rhinoplasty Surgery

Dr. Epstein submitted a request to approve medically necessary 30410 Rhinoplasty, primary; complete, external parts including bony pyramid, lateral and alar cartilages, and/or elevation of nasal tip which was denied by United Healthcare. NHP 00964-00967. Via a letter dated May 26, 2020, **United Healthcare stated that the service was unproven and experimental, without citing any medical literature**. NHP 00964-00967; NHP 1305-1307 (emphasis added).

### 1. First Appeal Due to UHCs Denial on Basis Rhinoplasty was Experimental

The Insured submitted an appeal via letter dated September 10, 2021. NHP 321-343. Ms. Gomez reiterated had required the services that UHC had previously approved.

7

NHP 324-325. She also referenced applicable plan language that stated the services were covered.

> "Physician fees for surgical and medical services" are covered and include that "you pay nothing, after the medical deductible has been met." *See* Benefit Summary, pg. 10.
>
> "Reconstructive procedures" is delineated as "the amount you pay is based on where the covered health care service is provided" and that "prior authorization is required." *See* Benefit Summary, pg. 10.

Ms. Gomez also provided proof of payment with diagnosis and codes for the services provided by Dr. Epstein for which a claim was submitted to NHP for authorization and payment for a total of $13,500. NHP 00971.

### 2. Second Denial in Response to First Appeal on the Basis that the Rhinoplasty was Cosmetic and an Exclusion Under the Plan

United Healthcare again denied coverage and submitted a response to the appeal via letter dated October 7, 2021. NHP 904-912. **United Healthcare changed its position and instead stated the Rhinoplasty was a plan exclusion because it was cosmetic**. NHP 00907. (emphasis added). UHC stated that it had relied upon clinical criteria, coverage determination guideline CDG 019.13 Rhinoplasty and Other Nasal Surgeries to make the decision ("the Coverage Guideline"). NHP 00906. Rhinoplasty-Primary (CPT Codes 30410, 30420) is considered reconstructive and medically necessary when all of the following criteria are present:

8

•       Prolonged, persistent obstructed nasal breathing due to nasal bone and septal deviation that are the primary causes of an anatomic Mechanical Nasal Airway Obstruction; and

•       The nasal airway obstruction cannot be corrected by septoplasty alone as documented in the medical record; and

•       Photos clearly document the nasal bone/septal deviation as the primary cause of an anatomic Mechanical Nasal Airway Obstruction and are consistent with the clinical exam; and

•       The proposed procedure is designed to correct the anatomic Mechanical Nasal Airway Obstruction and relieve the nasal airway obstruction by centralizing the nasal bony pyramid (30410) and also straightening the septum (30420); and

One of the following is present:
o Nasal fracture with nasal bone displacement severe enough to cause nasal airway obstruction; or
o Residual large cutaneous defect following resection of a malignancy or nasal trauma; and
•       Nasal airway obstruction is causing significant symptoms (e.g., chronic rhinosinusitis, difficulty breathing); and
•       Obstructive symptoms persist despite conservative management for 4 weeks or greater, which includes, where appropriate, nasal steroids or immunotherapy

NHP 898-903.

UHC then referenced the July 17, 2019 approval for Dr. Davis and compared to the operative note for the surgery completed by Dr. Epstein and stated that a septoplasty and repair of vestibular stenosis were not done. NHP 907. UHC confirmed that the code submitted for the review was 30410 Rhinoplasty, primary; complete, external parts including bony pyramid, lateral and alar cartilages, and/or elevation of nasal tip and concluded that the Rhinoplasty was a cosmetic service under the plan and

not a covered benefit. NH00906-907. UHC acknowledge that Ms. Gomez had trouble breathing and sought to improve her airway and reshape the nose. NHP 906-907. UHC defined a cosmetic procedure as a procedure that changes or improves appearance without significantly improving physiological function. NHP 907. UHC determined there was a lack of documentation that there was a physiologic functional impairment and stated the Rhinoplasty would primarily change appearance rather than improve physiologic function. NHP 907.

### 3. Second Appeal Due to UHC's Denial on Basis the Rhinoplasty was a Cosmetic Procedure

The Insured submitted a Second Appeal via letter dated October 3, 2022. NHP 1280-1371. Ms. Gomez also submitted photographs with her appeal NHP 01536-NHP 01583 with her appeal.[2] Ms. Gomez reiterated the Rhinoplasty was medically necessary and not for cosmetic purposes. NHP 1281. She cited the Coverage Guideline UHC had used to determine the Rhinoplasty was cosmetic and provided documentation, in specific detail, to evidence that every element of the Coverage Guideline was met to deem the Rhinoplasty medically necessary. She provided medical records, correspondence and photographs to indicate NHP's criteria was met. NHP 1340-1371; NHP 01536-NHP 01583.

---

[2] The administrative record was missing all photographs the Insured had submitted with her Second Appeal. UHC only located the photographs after suit was filed.

The medical records submitted with the Second Appeal for Dr. Epstein's claim clearly support that the Rhinoplasty was medically necessary pursuant to NHP's Policy and Coverage Guidelines. In accordance with the Coverage Guidelines, Rhinoplasty-Primary (CPT Codes 30410, 30420) is considered reconstructive **and medically necessary** when all of the following criteria are present:

- Prolonged, persistent obstructed nasal breathing due to nasal bone and septal deviation that are the primary causes of an anatomic Mechanical Nasal Airway Obstruction; and
  - o **Pursuant to Medical record dated May 16, 2019, the Insured had issues breathing AR NHP 00245-00248**
  - o **Pursuant to Medical record dated August 15, 2019, the Insured has issues with breathing AR NHP 984**
- The nasal airway obstruction cannot be corrected by septoplasty alone as documented in the medical record; and
  - o **Pursuant to the documentation submitted Rhinoplasty was the only option to repair the nose and to ensure that it is functional; NHP 00245-00248;**
- Photos clearly document the nasal bone/septal deviation as the primary cause of an anatomic Mechanical Nasal Airway Obstruction and are consistent with the clinical exam;
  - o **Photographs enclosed clearly showed the nasal bone/septal deviation as the primary cause of an anatomic Mechanical Nasal Airway Obstruction and are consistent with the clinical exam AR NHP 01537-01583.**
  - AND
- The proposed procedure is designed to correct the anatomic Mechanical Nasal Airway Obstruction and relieve the nasal airway obstruction by centralizing the nasal bony pyramid (30410) and also straightening the septum (30420);
  - o **Pursuant to Medical record dated August 15, 2019, the Insured had issues with airway and the surgery would be to relieve the obstruction; AR NHP 984; Medical Records also supported the fact that septoplasty had already been performed; AR0299; AR NHP 00424-00461.**
  - AND

**One of the following is present:**

> o Nasal fracture with nasal bone displacement severe enough to cause nasal airway obstruction; or
>
> o Residual large cutaneous defect following resection of a malignancy or nasal trauma;
>
> - **Enclosed medical records clearly documented nasal trauma AR0299; AR NHP 00424-00261.**
>
> AND

- Nasal airway obstruction is causing significant symptoms (e.g., chronic rhinosinusitis, difficulty breathing); and

> - **Pursuant to Medical record dated August 15, 2019, the Insured has issues with breathing AR NHP 00246-00248; AR NHP 984**

- Obstructive symptoms persist despite conservative management for 4 weeks or greater, which includes, where appropriate, nasal steroids or immunotherapy

> - **Pursuant to Medical record dated August 15, 2019, the Insured had issues with airway and surgery would be to relieve the obstruction; AR NHP 984; see also medical records on prior surgeries to substantiate the fact that other treatment was performed but failed; AR NHP 00424-00461.** *See also* **appeal NHP 0925-NHP 01013.**

These records were in addition to the information that UHC had already considered in its internal notes where it acknowledged that Ms. Gomez met the elements above.

*See* NHP 232.

### 4. Third Denial in Response to Second Appeal on the Basis that the Rhinoplasty was not Medically Necessary

United Healthcare again denied coverage and submitted a response to the appeal via letter dated November 7, 2022. NHP 1379-1388. **United Healthcare changed its position again and instead stated the Rhinoplasty was not medically necessary.** NHP 1382. (emphasis added). UHC stated that it had relied upon clinical criteria,

coverage determination guideline CDG 019.13 Rhinoplasty and Other Nasal Surgeries to make the decision ("the Coverage Guideline"). NHP 00906. UHC proceeded to add information to the rationale that was not relevant or at all applicable to the elements in the Coverage Guideline. The Third Denial used the following as a basis to deny the Rhinoplasty:

- Your records do not show documentation of a one month trial of medical treatments.
- They do not show that the bones and septum are the main cause of your breathing issue.
- Photos do not show significant displacement of the nasal bones.
- There is no CAT scan to show a nose fracture which blocks your airway.
- Photos do not show collapse of the nose air passages.
- They do not show that collapse of this area is a significant cause of your issue.
- The guidelines were not met for the main nose surgery to move the nasal bones.
- They were not met for the surgery to open the air passages.
- In addition, the note from the surgery does not show that the septum surgery was done.
- It does not show that the nose air passage surgery was done.
- These are not documented and therefore they are not covered.
- Moreover, some of these procedures would not meet the guidelines for outpatient surgery in a hospital had they been performed.
- Your records do not show that you have a serious medical illness.
- They do not show that there were no ambulatory surgery centers (ASC's) in your area. These could have been done in an ASC.

## SUMMARY OF THE ARGUMENT

The trial court erred when it held that UHC's decision was correct. In granting the Defendant's Motion for Summary Judgment, the district court erroneously disregarded overwhelming evidence in the record that supported coverage for the

reconstructive Rhinoplasty that occurred on October 10, 2019. Had the court thoroughly reviewed the administrative record and correctly applied the coverage guidelines and policy to the facts in the record, it would have had to deny summary judgment based on UHC's failure to consider the Insured's evidence. Second, under the policy and coverage guidelines, there is not an absolute exclusion for Rhinoplasty under the Plan. A Rhinoplasty is considered reconstructive and medically necessary when the elements of UHC's coverage determination guideline CDG 019.13 Rhinoplasty and Other Nasal Surgeries are met. NHP 450-455. Ms. Gomez provided ample evidence that the elements under the Coverage Guideline were met but UHC chose to ignore overwhelming evidence in the record. Third, the decision was arbitrary and capricious because UHC changed the basis of its denial three times to deny the reconstructive and medically necessary Rhinoplasty. The trial court erred when it held that UHC's decision was not arbitrary. UHC agreed and acknowledged that Ms. Gomez suffered from bilateral nasal airway obstruction and a twisted and misshapen nose. NHP 232. UHC also acknowledged that the Member had problems breathing through her nose prior nasal surgery, and a conspicuous tip deformity and symptomatic nasal airway dysfunction, nocturnal mouth breathing, excessive oral pharyngeal dryness during sleep, spotting blood, and watery rhinorrhea. NHP 232. UHC also acknowledged that the middle vault was splayed palpably irregular, tip complex is grossly misshapen, columella displaced to the left,

and that the caudal septum was dislocated and presenting into the right nasal vestibule. NHP 232. UHC arbitrarily discounted this medical evidence which had already been acknowledged by UHC on July 17, 2019, and the additional medical documentation provided during the appeals. UHC unreasonably denied coverage and was arbitrary and capricious in changing the basis for its denial multiple times. Further, the trial court completely disregarded the Plaintiff's legal arguments and instead made a conclusory statement that Plaintiff had a rudimentary position - "not true" in response to NHP's Motion for Summary Judgment. The trial court order also ignored the inherent nature of ERISA law which is to act in the best interests of the insured.

## STANDARD OF REVIEW

A motion for summary judgment is appropriate under Fed. R. Civ. P. 56(c), where the undisputed facts show that "there is no genuine issue as to any material fact and that [Plaintiff] is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986). In an ERISA benefits dispute, however, "the 'standard' summary judgment considerations do not apply." *See Hert v. Prudential Ins. Co. of Am*., 650 F. Supp. 2d 1180, 1190 (M.D. Fla. 2009). Instead, here, summary judgment is merely the conduit to bring the legal question before the district court. *See Crume v. Metro. Life*

*Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006).

Generally, "a denial of benefits challenged under § 502(a) (1) (B) of ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone & Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989) (emphasis added). If discretion is given in the Plan to either determine eligibility or construe its terms, the standard of review is under an "abuse of discretion." *Id*. To determine whether the ERISA plan grants to the administrator discretionary authority, the court looks to the relevant group policy and the summary plan description, "which together make up the ERISA plan, for purposes of 29 U.S.C. § 1102(a)(1)." *Shaw v. Conn. Gen. Life Ins. Co*. 353 F.3d 1276 (11th Cir. 2003). ERISA does not promulgate standards under which district courts must review a decision to deny benefits. *Bruch*, 489 U.S. at 109. To fill this void, the Supreme Court articulated a framework for judicial review, which the Eleventh Circuit developed **into a six-part test**. *Melech v. Life Ins. Co. of N. Am*., 739 F.3d 663, 672 (11th Cir. 2014).

(1) Apply the de novo standard to determine whether the claim administrator's benefits denial decision is "wrong"[3] (i.e., the court disagrees with the administrator's

---

[3]'Wrong' is the label used to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms de novo, the court disagrees with the claims administrator's plan interpretation. *Tippitt v. Reliance Standard Life Ins. Co*., 457 F.3d 1227 (11th Cir. 2006).

decision); if it is not, then end the inquiry and affirm the decision;

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision;

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard);

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest;

(5) If there is no conflict, then end the inquiry and affirm the decision;

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011); *See also O.D. v. Jones Lang Lasalle Medical PPO Plus Plan*, 772 Fed. Appx. 800, 803-804 (11th Cir. 2019). A conflict of interest may exist where the administrator determines eligibility for benefits and also pays claims out of its own assets. *German v. Metro. Life Ins. Co.*, 2016 WL 5661628, *5 (S.D. Fla. Sept. 30, 2016). The conflict of interest is one of many factors to take into account when

17

determining whether the denial of benefits was reasonable at step three. *Capone v. Aetna Life Ins. Co*., 592 F.3d 1189, 1195-1196 (11th Cir. 2010).

## ARGUMENT

### I.    THE DISTRICT COURT ERRED IN RULING THAT NEIGHBORHOOD HEALTH PARTNERSHIP'S DENIAL OF HEALTH INSURANCE BENEFITS WAS CORRECT

The trial court erred when it ruled that NHP's claim denial was correct. The trial court found that NHP's decision was not arbitrary and capricious even if *de novo* wrong because "the evidence raised by Defendant showed that these claims were cosmetic operations not covered by its policy." ECF No. 41 at 9. Defendant claims that there were no objective findings through medical records to support that the surgery by Dr. Epstein was medically necessary and instead claims it was cosmetic. ECF No. 41 at 14. The medical records provided by Plaintiff are all medical records which support medical necessity of the procedure pursuant to NHP's policy and coverage guidelines. NHP 1280-1371; NHP 01536-NHP 01583. Ms. Gomez detailed this in her appeals, and again in her Response to Defendant's Motion for Summary Judgment and Objections to the Report and Recommendation of the General Magistrate. NHP 1280-1371; NHP 01536-NHP 01583. While the issues were fully briefed and she made specific citations to the administrative record in her briefing, the trial court simply summarized her arguments as "Plaintiff argues "not true" in her response to Defendant's Motion for Summary Judgment." ECF No. 41 at 6. Her

18

arguments were fully ignored. Instead, the trial court adopted NHP's arguments almost verbatim without making clear findings of law or fact, without specific citations to the administrative record, without regard to the applicable coverage guidelines and policy, and without regard to the actual facts.

## A. The Trial Court Failed to Interpret the Policy and Coverage Guidelines to Make its Findings

The Report and Recommendation of the General Magistrate ("R&R") does not articulate whether the finding was that the services were not covered due to an exclusion or based on the definition of medical necessity. ECF. No 41. It appears that the only finding was that the services by Dr. Epstein were not medically necessary. R&R at 9-10 based only on section one of the policy. This was error because the trial court only referenced the definition of medical necessity without interpretation of the coverage guidelines used and referenced by NHP throughout the administrative record to make the decision to deny Plaintiff's claim. NHP 450-455. The Policy expressly incorporates coverage guidelines to determine whether the services meet the definition of medical necessity. The policy states as follows:

> We develop and maintain clinical policies that describe the Generally Accepted Standards of Medical Practice scientific evidence, prevailing medical standards and clinical guidelines supporting our determination regarding specific services. These clinical policies (as developed by us and revised from time to time), are available to Covered Persons through www.myuhc.com or the telephone number on your ID card. They are also available to Physicians and other health care professionals on UHCprovider.com

> NHP 00068.

19

NHP relied on its coverage determination guideline number Guideline Number: CDG.019.13 to deny Plaintiff's claim on two separate occasions. NHP 00450-00455. A review of the administrative record and Guideline Number: CDG.019.13 clearly demonstrates that NHP's decision was wrong. The R&R fails to interpret this coverage guideline which determines medical necessity. Thus, the trial court should have held that NHPs decision was wrong. The arguments were raised in Plaintiff's response to the Motion for Summary Judgment, but they were ignored and omitted from the analysis. *See* pgs. 12, 13, Response to MSJ.

### B. NHP's Decision was Not Correct Because it Ignored Substantial Evidence when it Denied Plaintiff's Claims

Plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). A plan administrator similarly acts culpably when it "ignore[s] overwhelming evidence of [a claimant's condition]" and **relies on selective portions of the claimant's medical records to justify its denial decision**. *Heffernan v. UNUM Life Ins. Co. of Am*., 101 Fed.Appx. 99, 109 (6th Cir.2004)(emphasis added). *See also Brock v. Walton*, 794 F.2d 586 (11th Cir. 1986) (A fiduciary's duty to investigate is a key facet of prudence and is often at the heart of fiduciary litigation); *See also Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 118, (2008) (to accurately process claims plan fiduciaries

20

must provide a "full and fair review" of all denied claims)(emphasis added); *See also Gaither v. Aetna Life Ins*. Co., 394 F.3d 792, 807 (10th Cir. 2004) (ERISA fiduciaries "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement").

The information submitted during the appeals process by Ms. Gomez for Dr. Epstein's claim support that the reconstructive Rhinoplasty was medically necessary pursuant to NHP's Policy and Coverage Guidelines. NHP 450-455. In accordance with the Coverage Guidelines, Rhinoplasty-Primary (CPT Codes 30410, 30420) is considered reconstructive **and medically necessary** when all of the following criteria are present:

- Prolonged, persistent obstructed nasal breathing due to nasal bone and septal deviation that are the primary causes of an anatomic Mechanical Nasal Airway Obstruction; and
  - **Pursuant to Medical record dated May 16, 2019, the Insured had issues breathing AR NHP 00245-00248**
  - **Pursuant to Medical record dated August 15, 2019, the Insured has issues with breathing AR NHP 984**
- The nasal airway obstruction cannot be corrected by septoplasty alone as documented in the medical record; and
  - **Pursuant to the documentation submitted Rhinoplasty was the only option to repair the nose and to ensure that it is functional; NHP 00245-00248;**
- Photos clearly document the nasal bone/septal deviation as the primary cause of an anatomic Mechanical Nasal Airway Obstruction and are consistent with the clinical exam;
  - **Photographs enclosed clearly showed the nasal bone/septal deviation as the primary cause of an anatomic Mechanical Nasal**

      **Airway Obstruction and are consistent with the clinical exam AR NHP 01537-01583.**

and

- The proposed procedure is designed to correct the anatomic Mechanical Nasal Airway Obstruction and relieve the nasal airway obstruction by centralizing the nasal bony pyramid (30410) and also straightening the septum (30420);
  - o **Pursuant to Medical record dated August 15, 2019, the Insured had issues with airway and the surgery would be to relieve the obstruction; AR NHP 984; Medical Records also supported the fact that septoplasty had already been performed; AR0299; AR NHP 00424-00461.**

- and

**One of the following is present:**

      o Nasal fracture with nasal bone displacement severe enough to cause nasal airway obstruction; or

      o Residual large cutaneous defect following resection of a malignancy or nasal trauma;

            - **Enclosed medical records clearly documented nasal trauma AR0299; AR NHP 00424-00261**.

      and

- Nasal airway obstruction is causing significant symptoms (e.g., chronic rhinosinusitis, difficulty breathing); and
  - o **Pursuant to Medical record dated August 15, 2019, the Insured has issues with breathing AR NHP 00245-00248; AR NHP 984**

- Obstructive symptoms persist despite conservative management for 4 weeks or greater, which includes, where appropriate, nasal steroids or immunotherapy
  - o **Pursuant to Medical record dated August 15, 2019, the Insured had issues with airway and surgery would be to relieve the obstruction; AR NHP 984; see also medical records on prior surgeries to substantiate the fact that other treatment was performed but failed; AR NHP 00424-00461**. *See also* appeal NHP 0925-NHP 01013.

With respect to medical necessity, the records clearly support that NHP's coverage

guidelines were met as required under the plan's terms. NHP 0925-NHP 01013. *See*

MSJ Response. ¶¶11-22. Plaintiff provided ample evidence that the Rhinoplasty was medically necessary pursuant to the policy and coverage guidelines. UHC even acknowledged on July 17, 2019, less than three months before the October 10, 2019 procedure with Dr. Epstein that Ms. Gomez had persistent (i) obstructed nasal breathing due to nasal bone and septal deviation (ii) septoplasty did not correct the issues (iii) the procedure would correct the issues (iv) had nasal trauma (v) had nasal airway obstruction with airway dysfunction, nocturnal mouth breathing, excessive oral pharyngeal dryness during sleep, spotting blood, watery rhinorrhea and (vi) prior treatment had not resolved the issues. NHP 232. The trial court stated that it was unpersuaded that there was a total overlap in procedures when Ms. Gomez referred to medical information to support approval of a Rhinoplasty with Dr. Davis instead of Dr. Epstein. R&R 10. The trial court also stated that the "biggest concern here is that Dr. Epstein's medical billing codes differed from Dr. Davis's." R&R 10. It was error to base the opinion on these issues because medical billing and coding issues were not ever the basis of any of UHC's denials. Furthermore, UHC clearly used its prior decision on July 16, 2019 when it provided a response to Plaintiff's first appeal. NHP 904-912. The same clinical information was at issue and same coverage guidelines were consistently applied by UHC. This is what the Insured's appeals focused on as they were the issues presented. The trial court went beyond the issues in the record and failed to apply the applicable coverage guidelines with

the clinical documentation as presented in the administrative record. There was no reasonable basis for denial of the reconstructive Rhinoplasty. Normally, a decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision." *Levinson v. Reliance Standard Life Ins. Co*., 245 F.3d 1321, 1325–26 (11th Cir. 2001). **NHP ignored material evidence that was available to it at the time it made its decision**. *See Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir. 2000)(emphasis added). Here there can be no reasonable basis for NHP's denial as it ignored evidence that clearly showed that Plaintiff met the criteria under the Policy to deem the Rhinoplasty medically necessary as stated above.

### C. NHP's Denials were Arbitrary and Capricious Because its Decisions were Inconsistent

NHP made inconsistent findings as to the basis of denial for the Rhinoplasty Epstein Claim, first stating it was experimental (NHP 1321-1324), second that it was a cosmetic procedure because there was no physiological impairment (NHP 904-912), third and last that it was not medically necessary (NHP 1379-1387). The final denial letter dated November 7, 2022 included reasons that had no relevance to the Plaintiff's requests as the issues were not ever raised by UHC as a basis for denial, nor were the reasons elements required under the applicable Coverage Guideline. NHP 00906. Specifically, this letter stated

• Your records do not show documentation of a one month trial of medical treatments.

**This was never a basis for denial, nor part of the coverage guideline, nor did UHC elaborate what type of trial it was referring to.**

NHP 1321-1324, NHP 904-912, NHP 1379-1387.

• They do not show that the bones and septum are the main cause of your breathing issue.

**This is contrary to UHC's prior acknowledgements.** NHP 232

• Photos do not show significant displacement of the nasal bones.

**This is contrary to UHC's prior acknowledgements.** NHP 232

• There is no CAT scan to show a nose fracture which blocks your airway.

**This was never a basis for denial, nor part of the coverage guideline. Ms. Gomez had nasal trauma, proof of a fracture was not required.**

NHP 1280-1371; NHP 450-455

• Photos do not show collapse of the nose air passages. They do not show that collapse of this area is a significant cause of your issue.

**This is not required under the coverage guideline.** NHP 450-455

• The guidelines were not met for the main nose surgery to move the nasal bones. They were not met for the surgery to open the air passages.

**This is not required under the coverage guideline.** NHP 450-455

• In addition, the note from the surgery does not show that the septum surgery was done. It does not show that the nose air passage surgery was done.

**This is not required under the coverage guideline.** NHP 450-455

• Moreover, some of these procedures would not meet the guidelines for outpatient surgery in a hospital had they been performed.

**This was never a basis for denial, nor part of the coverage guideline.**

NHP 450-455

• Your records do not show that you have a serious medical illness.

**This is not required under the coverage guideline.** NHP 450-455

- They do not show that there were no ambulatory surgery centers (ASC's) in your area. These could have been done in an ASC.
**This was never a basis for denial, nor part of the coverage guideline.**
NHP 450-455

These procedural irregularities and indicative of arbitrary and capricious decisions by NHP. *Hopp v. Aetna Life Ins. Co.*, 3 F.Supp.3d 1335 (Fla. Middle District 2014); *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377 (10th Cir.1992); *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1119–20 (10th Cir.2006). NHP's actions could not be reasonable under the circumstances.

## II.    THE DISTRICT COURT ERRED IN RULING THAT NHP'S DENIAL FOR THE MEDICALLY NECESSARY RHINOPLASTY WAS CORRECT BECAUSE NHP DID NOT ACT IN THE BEST INTEREST OF PLAINTIFF

NHP is a fiduciary under the plan. As an ERISA fiduciary, pursuant to 29 U.S.C. §1104(a), is required to discharge its duties **solely in the interest of the participants and beneficiaries**" and for the "**exclusive purpose**" of "providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan. *Id*. (emphasis added). A fiduciary must do so with "care, skill, prudence, and diligence" and in accordance with the terms of the plans administered. NHP is an insurance company it is held to a "higher than marketplace" standard. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118, (2008). ERISA insists that NHP discharge its duties with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). As a fiduciary, NHP must act "**solely in the interest of the**

**participants and beneficiaries**." 29 U.S.C. § 1104(a)(1)(A)(emphasis added); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

While there is no checklist for a claim review under the ERISA standard, NHP must engage in a "deliberate, principled reasoning process." *See Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir.2006), *aff'd Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed. 2d 299 (2008). That process requires NHP to consider all of the evidence provided by the claimant and any reviewing physicians in a deliberate manner with prudence and diligence. NHP clearly failed to take into account all of the available information and evidence provided to it by Ms. Gomez. NHP did not consider her best interests as required under ERISA because it made inconsistent decisions as a basis for denial that were arbitrary and capricious in violation of the policy and its coverage guidelines. This was a wrong decision and therefore the trial court erred in holding it was correct. A wrong decision must be reversed under the ERISA six part test. *Life Ins. Co. of N. Am.*, 739 F.3d at 672. The inconsistent actions were not reasonable which also warrants reversal. *Id.*

## <u>CONCLUSION</u>

Based on the foregoing, Appellant respectfully requests that this court reverse the district court's Order Granting Defendant's Motion for Summary Judgment as to

Count I of Plaintiff's Complaint, and the Judgment entered thereon, and remand this

matter for a trial on the merits on all claims.

Respectfully submitted,

**HEALTH AND MEDICINE LAW FIRM**
*Counsel for Plaintiff*
8950 SW 74 Court, Suite 2201
Miami, FL 33156
Ph: (305) 677-2292
Fax: (305) 677-2306
Service email:
admin@healthandmedicinelawfirm.com
Attorney email:
msanti@healthandmedicinelaw.com

By: **/s/ Maria T. Santi**
MARIA T. SANTI, ESQUIRE
Florida Bar No.: 117

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitation under

Rule 32(a)(7) of the Federal Rules of Appellate Procedure and 11th Circuit Rule 32-

4. According to the word-processing software's word count, there are 7,037 words

in the applicable sections of this brief. I also certify that this brief complies with the

applicable type-style requirements limitation under Rules 32(a)(5) and (6). The brief

was prepared in 14-point, Times New Roman font.

By: /s/ *Maria T. Santi*
**Maria T. Santi, Esq.**

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 16th day of August 2024, I electronically filed the

foregoing with the Clerk of Court by using the ECF system, which provided a notice

of electronic filing upon all counsel of record.

By: /s/ <u>*Maria T. Santi*</u>
**Maria T. Santi, Esq.**
